1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   WALTER SHANE LANGSTON,

11         Plaintiff,                    No. 2:11-cv-01624 DAD P

12      vs.

13   JEFFERY SHIAISHI, et al.,

14         Defendants.                   ORDER

15   _____/

16         Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. §1983.  Plaintiff has consented to Magistrate Judge jurisdiction over this action

18   pursuant to 28 U.S.C. § 636(c).  (See Doc. No. 4.)  Now before the court are plaintiff's amended

19   complaint and motions for discovery.

20   **I. The Court's Order Filed March 13, 2012**

21         In the court's order filed March 13, 2013, plaintiff was advised that the court is

22   required to screen complaints such as his and to dismiss such a complaint or portion thereof if the

23   claim presented is legally frivolous or malicious or fails to state a claim upon which relief may be

24   granted.  (See Doc. No. 8 at 2-3.)  The court also concluded that plaintiff's original complaint

25   was so defective that a determination could not be made as to whether plaintiff had stated

26   cognizable claims.  Therefore, the original complaint was dismissed and plaintiff was granted

1  leave to file an amended complaint.  In that order plaintiff was also advised of the requirements

2  for stating a cognizable § 1983 claim and that this action may be barred under the holding in

3  Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), if it was determined that a judgment in

4  plaintiff's favor in this action would necessarily imply the invalidity of his criminal conviction or

5  sentence.

6  **II. Plaintiff's Amended Complaint**

7          On April 26, 2012, plaintiff filed his amended complaint in this action.  (Doc. No.

8  14.)  The claims alleged in that amended complaint arise from the alleged actions of defendant

9  police officers Shiraishi[1] and Enkoji prior to plaintiff's detention and arrest on September 19,

10  2007.  Plaintiff alleges that on that day, the defendant police officers began to follow him as he

11  was driving the "public roadways" even though he had not committed any traffic violations.

12  (Doc. No. 14 at 1-2 & 4.)  Plaintiff also contends that the defendants pursued him because he is

13  African American and that they were engaging in racial profiling.  According to plaintiff, upon

14  his detention he denied that the car he was driving was stolen and that a vehicle check revealed

15  that no stolen vehicle report had been made by the owner of the vehicle he was driving.

16  Nevertheless, plaintiff alleges, he was booked into jail for delaying an officer, driving a vehicle

17  without the consent of the owner and driving a stolen vehicle.

18          Based on these allegations, plaintiff presents the following claims that he was:  (1)

19  subjected to racial discrimination, harassment and racial profiling in violation of the Fourteenth

20  Amendment; (2) subjected to an "unreasonable, and unconstitutional intrusion and harassment"

21  in violation of the Fourth and Fourteenth Amendments; (3) denied his "right to travel the public

22  roadways" in violation of the Fourteenth Amendment, and (4) the victim of defendants'

23  /////

24

25          [1] Plaintiff has misspelled this defendant's last name.  According to the court transcripts
   and police records, the correct spelling of this defendant's name is Shiraishi, not Shiriashi or
26  Shiaishi.

2

1   conspiracy with each other and with the Highway Patrol when they "ascribed criminal conduct on

2   him and caused his detention." (Id. at 3-5.)

3           As to the court's previous cautioning that to the extent his civil rights claim

4   implicate the validity of his criminal conviction and sentence on the criminal charges related to

5   this incident they may well be barred by the holding in Heck v. Humphrey, plaintiff argues that

6   the court has not identified a material fact that would bar the award of damages in this case and

7   that plaintiff's conviction was obtained not by jury verdict but rather by his entry of a "no

8   contest" plea. (Doc. No. 14 at 15; Doc. No. 14-1 at 88-89.)  Plaintiff asserts that his plea of no

9   contest preserved his ability to pursue a civil rights action such as this one with respect to the

10  underlying incident. (Id. at 16.)

11          In terms of relief, in his amended complaint plaintiff seeks monetary damages in

12  the amount of $1,000,000 from each defendant. (Id. at 20.)

13  **III.  Criminal Proceedings**

14          The facts surrounding plaintiff's detention, arrest and conviction in connection

15  with the underlying incident have not been fully detailed in the factual allegations set forth in

16  plaintiff's amended complaint.  However, to his amended complaint plaintiff has attached and

17  incorporated 200 pages of documents and court transcripts.  The court has reviewed those

18  attachments to the amended complaint and gleaned therefrom the following.

19      **A.  Preliminary Hearing**

20          At plaintiff's preliminary hearing on the criminal charges brought against him as a

21  result of this incident, defendant officer Shiraishi testified as follows.  On September 19, 2007,

22  defendants Enkoji and  Shiraishi were on patrol and driving southbound on Stockton Boulevard

23  in Sacramento County. (Id. at 73-74.)  Around 3:00 a.m., they observed a Ford Ranger going

24  northbound on Stockton Boulevard. (Id. at 73-74.)  They made a U-turn to follow the vehicle.

25  (Id. at 74.)  They observed the truck making a turn and proceeding westbound on El Paraiso.

26  (Id.)  As they continued a few blocks on El Paraiso, they observed that the vehicle had crashed

                                                    3

1   into a wrought iron fence at the intersection of El Paraiso and Lucero.  (Id. at 74.)  They also

2   observed the driver exiting the vehicle and running from the scene.  (Id. at 75 & 82.)  Defendant

3   officer Shiraishi chased the driver and searched the area.  (Id. at 75 & 83-86.)  Eventually, the

4   driver turned himself in, stating that he did not want to be bitten by a dog again.  (Id. at 77 & 86.)

5   The driver was identified as plaintiff.  (Id. at 77-78.)  Under cross-examination, defendant

6   Shiraishi testified that there were no other cars on the road at that time when they made a U-turn

7   to follow the truck.  (Id. at 80-81.)  When they began to follow the truck, they did not intend to

8   stop and detain the driver.  (Id. at 79-80.)  Defendant explained, "It was just common practice to

9   turn around, run license plates, ensure the vehicles aren't stolen."  (Id. at 80.)  However, after the

10   vehicle crashed into the fence and the driver fled the scene while the truck's engine was running,

11   the driver had committed a misdemeanor hit and run and property damage.  (Id. at 81-82.)

12          Police officer Matt Hoffman testified that after plaintiff was taken into custody on

13   September 19, 2007, Mr. Ackers, the registered owner of the Ford Ranger, arrived at the scene to

14   identify his truck.  (Doc. No. 14-2 at 62-63.)  Mr. Ackers was unaware that his truck had been

15   stolen until he received a call from the police department at approximately 4:00 a.m. that day.

16   (Id. at 63.)  Mr. Ackers later discovered that one of his spare car keys at his house was missing

17   and speculated it had been stolen when his house was burglarized.  (Id. at 64-66.)

18          **B.  Criminal Charges and Conviction**

19          Plaintiff was charged with first degree burglary of the home occupied by Jerome

20   Ackers, auto theft of Mr. Ackers' Ford Ranger truck, receiving stolen property, and resisting

21   arrest.  (Doc. No. 14 at 54-55 & 81-82.)

22          On April 8, 2010, as trial on those charges was to about to commence, plaintiff

23   informed the court, and his counsel confirmed, that plaintiff wished to entered an open plea.

24   (Doc. No. 14-1 at 78-80.)  The court asked plaintiff if he was prepared to admit all counts and

25   prior convictions without any promise by the court as to his punishment.  (Id.)  The court also

26   advised plaintiff of the potential maximum sentence for each count.  (Id. at 84-85.)  Plaintiff

1   affirmed that he understood the plea and that no promises were made as to the punishment that

2   would be imposed by the court.  (Id. at 80.)  Plaintiff then entered a plea of "no contest" as to

3   each count brought against him and admitted his prior convictions.  (Id. at 88-90.)

4           On May 6, 2010, the parties appeared before the court for the imposition of

5   judgment and sentence.  (Id. at 98.)  However at that time, plaintiff informed the court that he

6   wished to withdraw his plea because, in part, he thought his conviction would be a third strike

7   rather than a second strike.  (Id. at 100-01.)  The court granted time for the filing of a motion and

8   a new hearing date was set.  (Id. at 107-08.)

9           On May 21, 2010, plaintiff again asserted that he wished to withdraw his no

10   contest plea but he argued that there had been a breakdown in communication with his counsel.

11   (Id. at 116.)  Plaintiff was advised that if the case continued to be delayed, the prosecution would

12   seek to amend the information to allege his prior conviction in Georgia as another strike offense.

13   (Id.)  The court construed plaintiff's assertion as a Marsden motion and conducted a hearing.  (Id.

14   at 117.)  At the conclusion thereof , both his Marsden motion and his motion to withdraw his

15   plea were denied.  (Id. at 128-29.)   Thereafter, the court sentenced plaintiff to a term of

16   imprisonment of seventeen years and four months with time credits of 1,464 days and a

17   restitution fine of $3,400.  (Id. at 134.)

18   **IV.  Legal Standards for Civil Rights Action**

19           The Civil Rights Act under which this action was filed provides as follows:

20           Every person who, under color of [state law] . . . subjects, or causes
             to be subjected, any citizen of the United States . . . to the

21           deprivation of any rights, privileges, or immunities secured by the
             Constitution . . . shall be liable to the party injured in an action at

22           law, suit in equity, or other proper proceeding for redress.

23   42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

24   actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

25   Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

26   (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

1   meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

2   omits to perform an act which he is legally required to do that causes the deprivation of which

3   complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

4   **V. Discussion**

5       **A. Racial Discrimination, Profiling and Harassment Claims**

6               Plaintiff's racial discrimination, harassment and racial profiling claims center on

7   the defendant police officers' decision to follow plaintiff while he was driving the Ford Ranger

8   even though they had observed no traffic violation and when the truck had not yet been reported

9   stolen.  Arguably, such claims challenge only actions undertaken by the defendant officers prior

10  to plaintiff's arrest.  Accordingly, plaintiff's claims arguably fail to implicate his criminal

11  conviction and are therefore not Heck barred.

12              In any event, plaintiff has failed to allege facts stating a cognizable claim of racial

13  discrimination and/or harassment in violation of the Fourteenth Amendment.  The Equal

14  Protection Clause "is essentially a direction that all persons similarly situated should be treated

15  alike." City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  To state a

16  cognizable claim under the Equal Protection Clause, plaintiff "must plead intentional unlawful

17  discrimination or allege facts that are at least susceptible of an inference of discriminatory

18  intent." Byrd v. Maricopa County Sheriff's Dep't, 565 F.3d 1205, 1212 (9th Cir. 2009) (quoting

19  Monteiro v. Tempe Union High School District, 158 F.3d 1022, 1026 (9th Cir. 1998)).

20              Here, plaintiff contends that defendant police officers had a discriminatory intent

21  when they made a U-turn and followed the vehicle he was driving.  However, defendant officer

22  Shiraishi testified at plaintiff's the preliminary hearing that the officers followed the truck while

23  on patrol because it was routine and customary to check license plate numbers for stolen

24  vehicles, and the truck was the only vehicle on the road at 3:00 a.m.  The officers observed no

25  traffic or vehicle code violations and were not in the process of stopping plaintiff.  Rather, if

26  plaintiff had not crashed the vehicle into a fence and then fled the scene, he would have

1   continued on his way.  Furthermore, there is no allegation that plaintiff suffered any harm by

2   defendants' actions in merely following him for a short distance.  There clearly was no seizure

3   carried out here as a result of the officers' actions in merely following the vehicle plaintiff was

4   driving and checking the license plate.  See United States v. Washington, 490 F.3d 765, 769 (9th

5   Cir. 2007) ("A person is seized if 'taking into account all of the circumstances surrounding the

6   encounter, the police conduct would have communicated to a reasonable person that he was not

7   at liberty to ignore the police presence and go about his business.'") (quoting Florida v. Bostick,

8   501 U.S. 429, 437 (1991).  The subsequent crash and resulting arrest were based entirely on

9   plaintiff's own actions committed in the presence of the officers which provided probable cause

10  to believe that he had committed a crime.  Accordingly, the court concludes that plaintiff has

11  failed to state a cognizable Fourteenth Amendment claim of racial discrimination.

12          Plaintiff also claims that he was subjected to racial profiling.  "Racial profiling

13  can constitute a deprivation of a citizen's right to equal protection under the law." James v. City

14  of Seattle, No. C10-1612JLR, 2011 WL 6150567, at *13 (W.D. Wash. Dec. 12, 2011).

15  However, to state such a claim, "the plaintiff must establish that the defendant's actions had a

16  discriminatory effect and were motivated by a discriminatory purpose." Id. (citing United States

17  v. Armstrong, 517 U.S. 456, 465 (1996)).  As indicated above, plaintiff has not alleged any facts

18  demonstrating that the defendant officers acted with a discriminatory motive or intent in this

19  case.  Moreover, the amended complaint contains no allegations of a discriminatory effect

20  stemming from defendants' alleged actions.  Again, plaintiff merely alleges that the defendant

21  officers followed the vehicle he was driving at 3:00 a.m. on an otherwise empty road for a short

22  distance.  There is no physical intrusion or detention alleged in this case as there often is in other

23  racial profiling cases.  See Melendres v. Arpaio, 695 F.3d 990, 994 (9th Cir. 2012) (racial

24  profiling case involving stopping and detaining Latino drivers pretextually and without

25  individualized suspicion or cause); Choi v. Gaston, 220 F.3d 1010, 1012 (9th Cir. 2000) (racial

26  /////

7

1   profiling allegation for detention and arrest).  Accordingly, the court concludes that plaintiff has

2   failed to state a cognizable claim of unlawful racial profiling.

3        **B.  Fourth Amendment Claim**

4           Plaintiff also claims that he was subjected to an "unreasonable, and

5   unconstitutional intrusion and harassment" in violation of the Fourth Amendment.  (Doc. No. 14

6   at 3.)  The Fourth Amendment provides that "[t]he right of the people to be secure in their

7   persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

8   violated."  To the extent that plaintiff is claiming an unreasonable search and seizure of the

9   vehicle while defendants attempted to follow plaintiff, such a claim is frivolous.  There is no

10   authority prohibiting police on patrol from following a car for a few blocks and running a stolen

11   vehicle check.  Nor is there any authority for plaintiff's implied characterization of such police

12   action as an illegal search.

13        **C.  Right to Travel the Public Roadways**

14           Plaintiff claims that he has a Fourteenth Amendment right "to travel the public

15   roadways without being subject to Arbitration Action [sic], and A Abuse [sic] of power[.]"

16   (Doc. No. 14 at 4.)  The Fourteenth Amendment's right to travel is a right to move freely from

17   State to State or through the territory of any state.  Jones v. Helms, 452 U.S. 412, 419 n.12 &

18   n.13 (1981).  Here, plaintiff has not alleged that the defendant officers interfered with his ability

19   to drive on the streets of Sacramento in any way.  In fact, the allegations of the amended

20   complaint are that plaintiff continued to drive on the streets until, by his own action, he crashed

21   into the fence.

22        **D.  Conspiracy Claim**

23           In order to state a cognizable conspiracy claim under § 1983, plaintiff must allege

24   facts demonstrating that the defendants had an agreement or a meeting of the minds to violate his

25   constitutional rights.  See Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002); Woodrum v.

26   Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989); Fonda v. Gray, 707 F.2d 435, 438 (9th

1  Cir. 1983).  "To be liable, each participant in the conspiracy need not know the exact details of

2  the plan, but each participant must at least share the common objective of the conspiracy."

3  Franklin, 312 F.3d at 441.

4              Here, plaintiff alleges as follows:

5              Officer Shiairishi [sic] and Officer Enkoji conspired; who were
               motivated by plaintiff['s] race to deprive the plaintiff of the equal
6              rights secured by the law to all, and which results in injury that
               plaintiff anixety [sic], stress, and emotional distress, due to the
7              consequence of the overt act committed by the defendant in
               connection with the conspiracy, plaintiff, alleged that officer
8              Shiriashi [sic] spotted a Black driver, traveling in the opposite
               direction, and intentionally racial profiled, by radioed Dispatch that
9              is unit was in pursuit of stolen vehicle and need additional units,
               Officer Enkoji had the option to not U-turn, but instead U-turn in
10             pursuit of the Black driver, which show an agreement that there
               was a meeting of the minds by the defendants to violate the
11             claimants' Constitutional Rights.

12  (Doc. No. 14 at 5.)

13             As discussed above, plaintiff has failed to allege facts stating a cognizable claim

14  of unlawful discrimination or racial profiling.  Thus, his conspiracy claim which is based upon

15  those alleged violations fails as well.  Moreover, the allegations of plaintiff's amended complaint

16  do not demonstrate that there was an agreement between defendants or between the defendant

17  officers and the Highway Patrol to violate his constitutional rights.  Plaintiff has failed to state a

18  cognizable conspiracy claim.

19      **E.  Futility of Granting Leave to Amend**

20             The undersigned has carefully considered whether plaintiff may amend his

21  amended complaint to state any claim upon which relief can be granted.  "Valid reasons for

22  denying leave to amend include undue delay, bad faith, prejudice, and futility."  California

23  Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir.1988).  See also

24  Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir.1983)

25  (holding that, while leave to amend shall be freely given, the court need not allow futile

26  amendments).  Here, the claims alleged in plaintiff's amended complaint are frivolous and

1  clearly not cognizable.  Plaintiff has failed to correct the deficiencies noted in his original

2  complaint.  The court concludes that it would be futile under these circumstances to grant

3  plaintiff further leave to amend.

4  **VI.  Discovery Motions**

5          Plaintiff has filed two discovery motions.  Plaintiff seeks the production of police

6  dispatch and video recordings, police reports and all records pertaining to his arrest.  In light of

7  the court's determination that plaintiff fails to state cognizable claims in his amended complaint,

8  the court will deny plaintiff's discovery requests as having been rendered moot.

9  **VII.  Conclusion**

10         In accordance with the above, IT IS HEREBY ORDERED that:

11         1.  The amended complaint is dismissed for failure to state a cognizable claim;

12         2.  Plaintiff discovery motions filed on October 24, 2012 and April 19, 2013

13  (Docs. No. 15 & 16) are denied as moot; and

14         3.  This action is dismissed.

15  DATED: May 10, 2013.

16

17  _____

18  DAD:4                                         DALE A. DROZD
    lang1624.fsc                          UNITED STATES MAGISTRATE JUDGE
19

20

21

22

23

24

25

26