IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WALTER SHANE LANGSTON,

    Plaintiff,                       No. 2:11-cv-01624 DAD P

    vs.

JEFFERY SHIAISHI, et al.,

    Defendants.              ORDER

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. §1983. Plaintiff has consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c). (See Doc. No. 4.) Now before the court are plaintiff's amended complaint and motions for discovery.

**I. The Court's Order Filed March 13, 2012**

        In the court's order filed March 13, 2013, plaintiff was advised that the court is required to screen complaints such as his and to dismiss such a complaint or portion thereof if the claim presented is legally frivolous or malicious or fails to state a claim upon which relief may be granted. (See Doc. No. 8 at 2-3.) The court also concluded that plaintiff's original complaint was so defective that a determination could not be made as to whether plaintiff had stated cognizable claims. Therefore, the original complaint was dismissed and plaintiff was granted

leave to file an amended complaint. In that order plaintiff was also advised of the requirements for stating a cognizable § 1983 claim and that this action may be barred under the holding in Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), if it was determined that a judgment in plaintiff's favor in this action would necessarily imply the invalidity of his criminal conviction or sentence.

II. **Plaintiff's Amended Complaint**

On April 26, 2012, plaintiff filed his amended complaint in this action. (Doc. No. 14.) The claims alleged in that amended complaint arise from the alleged actions of defendant police officers Shiraishi[1] and Enkoji prior to plaintiff's detention and arrest on September 19, 2007. Plaintiff alleges that on that day, the defendant police officers began to follow him as he was driving the "public roadways" even though he had not committed any traffic violations. (Doc. No. 14 at 1-2 & 4.) Plaintiff also contends that the defendants pursued him because he is African American and that they were engaging in racial profiling. According to plaintiff, upon his detention he denied that the car he was driving was stolen and that a vehicle check revealed that no stolen vehicle report had been made by the owner of the vehicle he was driving. Nevertheless, plaintiff alleges, he was booked into jail for delaying an officer, driving a vehicle without the consent of the owner and driving a stolen vehicle.

Based on these allegations, plaintiff presents the following claims that he was: (1) subjected to racial discrimination, harassment and racial profiling in violation of the Fourteenth Amendment; (2) subjected to an "unreasonable, and unconstitutional intrusion and harassment" in violation of the Fourth and Fourteenth Amendments; (3) denied his "right to travel the public roadways" in violation of the Fourteenth Amendment, and (4) the victim of defendants'

/////

---

[1] Plaintiff has misspelled this defendant's last name. According to the court transcripts and police records, the correct spelling of this defendant's name is Shiraishi, not Shiriashi or Shiaishi.

conspiracy with each other and with the Highway Patrol when they "ascribed criminal conduct on him and caused his detention." (Id. at 3-5).

As to the court's previous cautioning that to the extent his civil rights claim implicate the validity of his criminal conviction and sentence on the criminal charges related to this incident they may well be barred by the holding in Heck v. Humphrey, plaintiff argues that the court has not identified a material fact that would bar the award of damages in this case and that plaintiff's conviction was obtained not by jury verdict but rather by his entry of a "no contest" plea. (Doc. No. 14 at 15; Doc. No. 14-1 at 88-89.) Plaintiff asserts that his plea of no contest preserved his ability to pursue a civil rights action such as this one with respect to the underlying incident. (Id. at 16.)

In terms of relief, in his amended complaint plaintiff seeks monetary damages in the amount of $1,000,000 from each defendant. (Id. at 20.)

**III. Criminal Proceedings**

The facts surrounding plaintiff's detention, arrest and conviction in connection with the underlying incident have not been fully detailed in the factual allegations set forth in plaintiff's amended complaint. However, to his amended complaint plaintiff has attached and incorporated 200 pages of documents and court transcripts. The court has reviewed those attachments to the amended complaint and gleaned therefrom the following.

**A. Preliminary Hearing**

At plaintiff's preliminary hearing on the criminal charges brought against him as a result of this incident, defendant officer Shiraishi testified as follows. On September 19, 2007, defendants Enkoji and Shiraishi were on patrol and driving southbound on Stockton Boulevard in Sacramento County. (Id. at 73-74.) Around 3:00 a.m., they observed a Ford Ranger going northbound on Stockton Boulevard. (Id. at 73-74.) They made a U-turn to follow the vehicle. (Id. at 74.) They observed the truck making a turn and proceeding westbound on El Paraiso. (Id.) As they continued a few blocks on El Paraiso, they observed that the vehicle had crashed

1   into a wrought iron fence at the intersection of El Paraiso and Lucero. (Id. at 74.) They also
2   observed the driver exiting the vehicle and running from the scene. (Id. at 75 & 82.) Defendant
3   officer Shiraishi chased the driver and searched the area. (Id. at 75 & 83-86.) Eventually, the
4   driver turned himself in, stating that he did not want to be bitten by a dog again. (Id. at 77 & 86.)
5   The driver was identified as plaintiff. (Id. at 77-78.) Under cross-examination, defendant
6   Shiraishi testified that there were no other cars on the road at that time when they made a U-turn
7   to follow the truck. (Id. at 80-81.) When they began to follow the truck, they did not intend to
8   stop and detain the driver. (Id. at 79-80.) Defendant explained, "It was just common practice to
9   turn around, run license plates, ensure the vehicles aren't stolen." (Id. at 80.) However, after the
10  vehicle crashed into the fence and the driver fled the scene while the truck's engine was running,
11  the driver had committed a misdemeanor hit and run and property damage. (Id. at 81-82.)

12           Police officer Matt Hoffman testified that after plaintiff was taken into custody on
13  September 19, 2007, Mr. Ackers, the registered owner of the Ford Ranger, arrived at the scene to
14  identify his truck. (Doc. No. 14-2 at 62-63.) Mr. Ackers was unaware that his truck had been
15  stolen until he received a call from the police department at approximately 4:00 a.m. that day.
16  (Id. at 63.) Mr. Ackers later discovered that one of his spare car keys at his house was missing
17  and speculated it had been stolen when his house was burglarized. (Id. at 64-66.)

18       **B. Criminal Charges and Conviction**

19           Plaintiff was charged with first degree burglary of the home occupied by Jerome
20  Ackers, auto theft of Mr. Ackers' Ford Ranger truck, receiving stolen property, and resisting
21  arrest. (Doc. No. 14 at 54-55 & 81-82.)

22           On April 8, 2010, as trial on those charges was to about to commence, plaintiff
23  informed the court, and his counsel confirmed, that plaintiff wished to entered an open plea.
24  (Doc. No. 14-1 at 78-80.) The court asked plaintiff if he was prepared to admit all counts and
25  prior convictions without any promise by the court as to his punishment. (Id.) The court also
26  advised plaintiff of the potential maximum sentence for each count. (Id. at 84-85.) Plaintiff

affirmed that he understood the plea and that no promises were made as to the punishment that would be imposed by the court. (Id. at 80.) Plaintiff then entered a plea of "no contest" as to each count brought against him and admitted his prior convictions. (Id. at 88-90.)

On May 6, 2010, the parties appeared before the court for the imposition of judgment and sentence. (Id. at 98.) However at that time, plaintiff informed the court that he wished to withdraw his plea because, in part, he thought his conviction would be a third strike rather than a second strike. (Id. at 100-01.) The court granted time for the filing of a motion and a new hearing date was set. (Id. at 107-08.)

On May 21, 2010, plaintiff again asserted that he wished to withdraw his no contest plea but he argued that there had been a breakdown in communication with his counsel. (Id. at 116.) Plaintiff was advised that if the case continued to be delayed, the prosecution would seek to amend the information to allege his prior conviction in Georgia as another strike offense. (Id.) The court construed plaintiff's assertion as a Marsden motion and conducted a hearing. (Id. at 117.) At the conclusion thereof, both his Marsden motion and his motion to withdraw his plea were denied. (Id. at 128-29.) Thereafter, the court sentenced plaintiff to a term of imprisonment of seventeen years and four months with time credits of 1,464 days and a restitution fine of $3,400. (Id. at 134.)

**IV. Legal Standards for Civil Rights Action**

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the

meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

**V. Discussion**

    **A. Racial Discrimination, Profiling and Harassment Claims**

Plaintiff's racial discrimination, harassment and racial profiling claims center on the defendant police officers' decision to follow plaintiff while he was driving the Ford Ranger even though they had observed no traffic violation and when the truck had not yet been reported stolen. Arguably, such claims challenge only actions undertaken by the defendant officers prior to plaintiff's arrest. Accordingly, plaintiff's claims arguably fail to implicate his criminal conviction and are therefore not Heck barred.

In any event, plaintiff has failed to allege facts stating a cognizable claim of racial discrimination and/or harassment in violation of the Fourteenth Amendment. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985). To state a cognizable claim under the Equal Protection Clause, plaintiff "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." Byrd v. Maricopa County Sheriff's Dep't, 565 F.3d 1205, 1212 (9th Cir. 2009) (quoting Monteiro v. Tempe Union High School District, 158 F.3d 1022, 1026 (9th Cir. 1998)).

Here, plaintiff contends that defendant police officers had a discriminatory intent when they made a U-turn and followed the vehicle he was driving. However, defendant officer Shiraishi testified at plaintiff's the preliminary hearing that the officers followed the truck while on patrol because it was routine and customary to check license plate numbers for stolen vehicles, and the truck was the only vehicle on the road at 3:00 a.m. The officers observed no traffic or vehicle code violations and were not in the process of stopping plaintiff. Rather, if plaintiff had not crashed the vehicle into a fence and then fled the scene, he would have

1  continued on his way.  Furthermore, there is no allegation that plaintiff suffered any harm by
2  defendants' actions in merely following him for a short distance.  There clearly was no seizure
3  carried out here as a result of the officers' actions in merely following the vehicle plaintiff was
4  driving and checking the license plate.  See United States v. Washington, 490 F.3d 765, 769 (9th
5  Cir. 2007) ("A person is seized if 'taking into account all of the circumstances surrounding the
6  encounter, the police conduct would have communicated to a reasonable person that he was not
7  at liberty to ignore the police presence and go about his business.'") (quoting Florida v. Bostick,
8  501 U.S. 429, 437 (1991).  The subsequent crash and resulting arrest were based entirely on
9  plaintiff's own actions committed in the presence of the officers which provided probable cause
10 to believe that he had committed a crime.  Accordingly, the court concludes that plaintiff has
11 failed to state a cognizable Fourteenth Amendment claim of racial discrimination.

12         Plaintiff also claims that he was subjected to racial profiling.  "Racial profiling
13 can constitute a deprivation of a citizen's right to equal protection under the law."  James v. City
14 of Seattle, No. C10-1612JLR, 2011 WL 6150567, at *13 (W.D. Wash. Dec. 12, 2011).
15 However, to state such a claim, "the plaintiff must establish that the defendant's actions had a
16 discriminatory effect and were motivated by a discriminatory purpose."  Id. (citing United States
17 v. Armstrong, 517 U.S. 456, 465 (1996)).  As indicated above, plaintiff has not alleged any facts
18 demonstrating that the defendant officers acted with a discriminatory motive or intent in this
19 case.  Moreover, the amended complaint contains no allegations of a discriminatory effect
20 stemming from defendants' alleged actions.  Again, plaintiff merely alleges that the defendant
21 officers followed the vehicle he was driving at 3:00 a.m. on an otherwise empty road for a short
22 distance.  There is no physical intrusion or detention alleged in this case as there often is in other
23 racial profiling cases.  See Melendres v. Arpaio, 695 F.3d 990, 994 (9th Cir. 2012) (racial
24 profiling case involving stopping and detaining Latino drivers pretextually and without
25 individualized suspicion or cause); Choi v. Gaston, 220 F.3d 1010, 1012 (9th Cir. 2000) (racial
26 /////

1  profiling allegation for detention and arrest).  Accordingly, the court concludes that plaintiff has
2  failed to state a cognizable claim of unlawful racial profiling.

3      **B.  Fourth Amendment Claim**

4      Plaintiff also claims that he was subjected to an "unreasonable, and
5  unconstitutional intrusion and harassment" in violation of the Fourth Amendment.  (Doc. No. 14
6  at 3.)  The Fourth Amendment provides that "[t]he right of the people to be secure in their
7  persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be
8  violated."  To the extent that plaintiff is claiming an unreasonable search and seizure of the
9  vehicle while defendants attempted to follow plaintiff, such a claim is frivolous.  There is no
10 authority prohibiting police on patrol from following a car for a few blocks and running a stolen
11 vehicle check.  Nor is there any authority for plaintiff's implied characterization of such police
12 action as an illegal search.

13     **C.  Right to Travel the Public Roadways**

14     Plaintiff claims that he has a Fourteenth Amendment right "to travel the public
15 roadways without being subject to Arbitration Action [sic], and A Abuse [sic] of power[.]"
16 (Doc. No. 14 at 4.)  The Fourteenth Amendment's right to travel is a right to move freely from
17 State to State or through the territory of any state.  Jones v. Helms, 452 U.S. 412, 419 n.12 &
18 n.13 (1981).  Here, plaintiff has not alleged that the defendant officers interfered with his ability
19 to drive on the streets of Sacramento in any way.  In fact, the allegations of the amended
20 complaint are that plaintiff continued to drive on the streets until, by his own action, he crashed
21 into the fence.

22     **D.  Conspiracy Claim**

23     In order to state a cognizable conspiracy claim under § 1983, plaintiff must allege
24 facts demonstrating that the defendants had an agreement or a meeting of the minds to violate his
25 constitutional rights.  See Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002); Woodrum v.
26 Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989); Fonda v. Gray, 707 F.2d 435, 438 (9th

1  Cir. 1983). "To be liable, each participant in the conspiracy need not know the exact details of

2  the plan, but each participant must at least share the common objective of the conspiracy."

3  <u>Franklin</u>, 312 F.3d at 441.

4         Here, plaintiff alleges as follows:

> Officer Shiairishi [sic] and Officer Enkoji conspired; who were motivated by plaintiff['s] race to deprive the plaintiff of the equal rights secured by the law to all, and which results in injury that plaintiff anixety [sic], stress, and emotional distress, due to the consequence of the overt act committed by the defendant in connection with the conspiracy, plaintiff, alleged that officer Shiriashi [sic] spotted a Black driver, traveling in the opposite direction, and intentionally racial profiled, by radioed Dispatch that is unit was in pursuit of stolen vehicle and need additional units, Officer Enkoji had the option to not U-turn, but instead U-turn in pursuit of the Black driver, which show an agreement that there was a meeting of the minds by the defendants to violate the claimants' Constitutional Rights.

12  (Doc. No. 14 at 5.)

13         As discussed above, plaintiff has failed to allege facts stating a cognizable claim

14  of unlawful discrimination or racial profiling. Thus, his conspiracy claim which is based upon

15  those alleged violations fails as well. Moreover, the allegations of plaintiff's amended complaint

16  do not demonstrate that there was an agreement between defendants or between the defendant

17  officers and the Highway Patrol to violate his constitutional rights. Plaintiff has failed to state a

18  cognizable conspiracy claim.

19        **E.  Futility of Granting Leave to Amend**

20         The undersigned has carefully considered whether plaintiff may amend his

21  amended complaint to state any claim upon which relief can be granted. "Valid reasons for

22  denying leave to amend include undue delay, bad faith, prejudice, and futility." <u>California

23  Architectural Bldg. Prod. v. Franciscan Ceramics</u>, 818 F.2d 1466, 1472 (9th Cir.1988). <u>See also</u>

24  <u>Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau</u>, 701 F.2d 1276, 1293 (9th Cir.1983)

25  (holding that, while leave to amend shall be freely given, the court need not allow futile

26  amendments). Here, the claims alleged in plaintiff's amended complaint are frivolous and

clearly not cognizable. Plaintiff has failed to correct the deficiencies noted in his original complaint. The court concludes that it would be futile under these circumstances to grant plaintiff further leave to amend.

## VI. Discovery Motions

Plaintiff has filed two discovery motions. Plaintiff seeks the production of police dispatch and video recordings, police reports and all records pertaining to his arrest. In light of the court's determination that plaintiff fails to state cognizable claims in his amended complaint, the court will deny plaintiff's discovery requests as having been rendered moot.

## VII. Conclusion

In accordance with the above, IT IS HEREBY ORDERED that:

1. The amended complaint is dismissed for failure to state a cognizable claim;

2. Plaintiff discovery motions filed on October 24, 2012 and April 19, 2013 (Docs. No. 15 & 16) are denied as moot; and

3. This action is dismissed.

DATED: May 10, 2013.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
lang1624.fsc